

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

```
─────────────────────────────────── X
ROBERT HADDON, on Behalf of Himself and all  :
Others Similarly Situated,                   :
                                             :
                        Plaintiff,           :
              vs.                            :   CLASS ACTION
                                             :   COMPLAINT FOR
CYTYC CORPORATION, PATRICK J. SULLIVAN       :   VIOLATIONS OF FEDERAL
and ROBERT L. BOWEN,                         :   SECURITIES LAWS
                                             :
                        Defendant.           :   JURY TRIAL DEMANDED
                                             :
─────────────────────────────────── X
```

02-12399-JLT

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Cytyc Corporation ("Cytyc" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal class action on behalf of purchasers of the securities of Cytyc between July 25, 2001 to June 25, 2002, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

20 of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their position of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Cytyc's business.

13. The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

14. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of Cytyc between July 25, 2001 to June 25, 2002, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

15. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Cytyc had approximately 121.6 million shares of common stock outstanding, which were actively traded on the NASDAQ National Market (the "NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and

can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Cytyc or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

17. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

18. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) whether the federal securities laws were violated by defendants' acts as alleged herein;

    (b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Cytyc; and

    (c) to what extent the members of the Class have sustained damages and the proper measure of damages.

19. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

slower rate than it had been, as demand inched closer to the saturation-point, Cytyc sought to increase its product offerings through corporate acquisitions.

22. Accordingly, in order to buoy its stock price for use as currency for acquisitions, Cytyc represented throughout the Class Period that it was enjoying record revenue and earnings growth, increasing ThinPrep's market share, that its revenues would grow by a healthy 25% in 2002 over 2001, to $275-$300 million, and that the Company was not negatively impacted and, given the nature of its product, would not be negatively impacted by the general economic slowdown that was well underway at the time. These statements were materially false and misleading because they failed to disclose that ThinPrep's growth was slowing materially, that the Company's seemingly-impressive growth throughout the Class Period was attributable, in part, to overstocking of inventory at the laboratories which purchased ThinPrep in large volumes in reaction to deep discounts offered by Cytyc (which recognizes revenue upon shipment) to mask the weakening end-user demand.

23. The strategy worked. On December 3, 2001, Cytyc acquired Pro-Duct Health, Inc., a seller of breast-cancer screening products, for $167 million in cash and Cytyc stock. Subsequently, on February 2, 2002, Cytyc announced that it has entered a definitive merger agreement to acquire Digene Corporation ("Digene"), a seller of gene-based diagnostic testing systems for cervical cancer, hepatitis B and other diseases, for cash and Cytyc stock, for a total value of $554 million at the time of the announcement. The Company expected the Digene acquisition to close by March 28, 2002.

24. In addition, defendants were further motivated to commit the securities laws violations alleged herein in order to allow defendant Sullivan to sell his personally held shares of

common stock the previous day ($26.55 per share), the deal was valued at $167.5 million. Underscoring the attractiveness of the deal, defendant Sullivan described Pro-Duct as an "ideal fit" representing an estimated "annual U.S. market potential of $1.5 billion, growing to $4.0 billion [... ]" The transaction, scheduled to close in the fourth quarter of 2001, was expected to be $0.05 dilutive to Cytyc's 2002 earnings and accretive to 2003 revenues and earnings, according to the press release.

32.  On October 24, 2001, Cytyc issued a press release headlined, "Cytyc Reports Record Revenue and EPS; U.S. market Share Exceeds 50 Percent Third Quarter Revenue Grows to $57 Million." The reported revenue represented a 54% increase from the third quarter of 2000 and pro-forma net income of $0.12 per diluted share was double the $0.06 earned in the third quarter of 2000. In the press release, defendant Sullivan highlighted the pending Pro-Duct acquisition and explained that Cytyc's results were driven by ThinPrep's effectiveness and the Company's successful marketing and sales efforts, stating in pertinent part as follows:

> 'We believe the superior clinical performance of the ThinPrep(R) Pap Test(TM) and the effectiveness of our sales and marketing strategy have provided Cytyc with consistent revenue and earnings growth and financial performance,' said Patrick J. Sullivan, Cytyc's president and chief executive officer. 'Last week we announced that Cytyc has entered into a definitive merger agreement to acquire Pro-Duct Health, Inc., an acquisition that we expect will expand our product line to include breast cancer and provide an excellent opportunity for significant revenue and earnings growth.' Cytyc management will discuss results of the third quarter and future expectations during a conference call on October 24, 2001, at 5:00 p.m. (Eastern).

33.  On December 6 and 7, 2001, defendant Sullivan sold 55,000 and 20,000 shares, respectively, of Cytyc common stock at $24.9 per share for total gross proceeds of $1,867,500.